UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RICHARD LASK, | : | Case No. 1:23-cv-525 |
| | : | |
| Petitioner, | : | |
| | : | District Judge Michael R. Barrett |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| WARDEN, NORTH CENTRAL CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the North Central Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's motion to dismiss (Doc. 14) and petitioner's response in opposition (Doc. 16). For the reasons stated below, the undersigned recommends that respondent's motion be granted and the petition be dismissed because it is time-barred pursuant to 28 U.S.C. § 2241(d)(1).

### I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> {¶2} On October 9, 2017, a Kansas Highway Patrol trooper stopped appellant's vehicle on Interstate 70 for allegedly following another vehicle too closely. During the ensuing encounter, the trooper searched appellant's vehicle and discovered empty duffle bags that contained "marijuana shake" and "dryer sheets." The

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

trooper also observed two large "fairly empty coolers" in the vehicle's back seat. The trooper let appellant leave the scene, but later wrote an email to summarize his encounter and his suspicion about appellant's involvement in drug trafficking. The trooper then sent the email to the Adams County, Ohio Sheriff's Office.

{¶3} Adams County Sheriff's Detective Sam Purdin received the Kansas email and decided to investigate. On October 16, 2017, one week after the Kansas traffic stop, Detective Purdin drove to appellant's residence and observed a pickup truck leave the premises. After Purdin observed the vehicle run a stop sign and drive left of the centerline, he stopped the vehicle.

{¶4} As Detective Purdin approached appellant, the vehicle's driver, the detective "instantly smelled" a "very strong" odor of burnt marijuana emanating from the vehicle. Appellant later admitted that he had smoked marijuana. Shortly thereafter, another officer arrived at the scene and performed field sobriety tests. After officers arrested appellant for operating a vehicle while under the influence, a vehicle search resulted in the discovery of approximately two pounds of marijuana.

{¶5} After this encounter, Detective Purdin applied for a warrant to search appellant's residence. The search-warrant affidavit states:

> On October 9, 2017, the Affiant received information from the Kansas Highway Patrol indicating a Trooper stopped a vehicle driven by Richard Lask. The Trooper discovered two (2) large duffel bags containing marijuana "shake" and dryer sheets. The Trooper stated Richard Lask indicated the marijuana discovered was his own personal use.
>
> The Affiant further states on October 16, 2017, he went to the residence of Richard Lask to follow up on this information. While in the area, the Affiant observed Richard Lask leaving his residence in a red Dodge Dakota truck. The Affiant observed the vehicle failed to stop at a stop sign located at the intersection of State Route 41 and Stanfield Road. The Affiant further observed the vehicle's brake lights were broken. Based on these observations, the Affiant conducted a traffic stop on the vehicle. The Affiant requested additional law enforcement units proceed to the scene to assist.
>
> As the Affiant approached the vehicle, he could detect a strong odor of marijuana emanating from the vehicle. The Affiant states he has been a Law Enforcement Officer for approximately 17 years and through his training and experience can positively identify the odor of marijuana. While speaking with Richard Lask, the Affiant observed his speech was slurred and his eyes were "bloodshot." Richard Lask admitted to the Affiant he had

> previously smoked marijuana. Deputy Walters arrived at the scene and conducted field sobriety tests on Richard Lask. Mr. Lask was determined to be driving a vehicle under the influence of drugs and/or alcohol and was placed under arrest. The Affiant further states an inventory search of Richard Lask's vehicle revealed approximately two (2) pounds of marijuana. Mr. Lask stated this marijuana was for his own personal use.
>
> The Affiant further states he believes there is being concealed at the residen[ce] of Richard Lask * * * an undetermined amount of marijuana and items used in the cultivation of marijuana. These beliefs are based on the Affiant observing Richard Lask leaving his residence just prior to being discovered with marijuana in his possession. Based on the amount of marijuana discovered inside Richard Lask's vehicle, the Affiant believes this is not for personal use and further criminal activity is being conducted inside Richard Lask's residence.

{¶6} A judge granted Detective Purdin's request for a warrant to search appellant's residence and, during the search, officers discovered a substantial amount of marijuana and drug paraphernalia.

{¶7} On October 27, 2017, an Adams County Grand Jury returned an indictment that charged appellant with possession of marijuana, in an amount of approximately 40,000 grams, a second-degree felony in violation of R.C. 2925.11(A). Appellant entered a not guilty plea and filed a motion to suppress evidence.

{¶8} In his motion to suppress evidence, appellant asserted that (1) officers improperly detained appellant for a suspicion of operating a motor vehicle while under the influence, and (2) because officers based the search of his home upon information obtained during the Kansas unconstitutional search and seizure, the evidence discovered during the search is the fruit of the unlawful Kansas traffic stop. Consequently, appellant requested the trial court suppress the evidence discovered during the search of his residence. The trial court, however, overruled appellant's motion to suppress evidence.

{¶9} Subsequently, appellant entered a no-contest plea to the possession of marijuana charge, in violation of R.C. 2925.11(A) a second-degree felony. The trial court sentenced appellant to serve a mandatory minimum five-year prison term. Appellant appealed his judgment of conviction and sentence. Appellant argued that the trial court incorrectly determined that the Kansas state trooper had either probable cause or a reasonable suspicion to stop appellant's vehicle for a traffic violation.

3

{¶10} After review, this Court noted that (1) the Kansas trooper failed to articulate any specific facts that gave rise to a reasonable suspicion that appellant committed a traffic violation, (2) the video evidence did not show an alleged traffic violation, and (3) the trooper could not recall any details regarding the alleged traffic violation. Thus, this Court determined that any evidence obtained from the Kansas traffic stop should be inadmissible. We further concluded, however, that evidence obtained from the Ohio traffic stop is admissible. Thus, we rejected appellant's argument that the Ohio traffic stop was derived solely from information learned from the unconstitutional Kansas traffic stop. Appellant, however, asserted that information learned during the unconstitutional Kansas traffic stop motivated Detective Purdin to drive to appellant's house to investigate. We observed that, even if Purdin decided to investigate appellant due to the Kansas email, Purdin did not stop appellant's vehicle on the basis of any information contained in the Kansas trooper's email. Instead, Purdin stopped appellant's vehicle after the detective observed appellant run a stop sign and drive left-of-center. We therefore agreed with the trial court's conclusion that Purdin had probable cause, independent of the unlawful Kansas traffic stop, to stop appellant's vehicle. We further noted that appellant did not challenge the trial court's finding that Purdin had probable cause to search the vehicle. We then considered the issue of whether the evidence discovered during the search of appellant's home should be suppressed because the search-warrant affidavit contained some information obtained from the Kansas traffic stop. We recognized that the trial court did not consider whether the search-warrant affidavit contained sufficient probable cause that evidence of a crime would be discovered at appellant's residence absent the information obtained during the Kansas traffic stop. We thus remanded the matter so the trial court could consider whether Detective Purdin's search-warrant affidavit set forth sufficient information to constitute probable cause to search without considering information obtained during the Kansas traffic stop.

{¶11} On June 10, 2020, the trial court held a hearing to consider the issue. The state asserted that the trial court should be limited to considering whether the remainder of the warrant, absent the Kansas information, established probable cause. Appellant, however, argued that the court must consider whether the Kansas information also tainted Detective Purdin's decision to obtain the warrant. Appellant claimed the exclusionary rule requires courts to suppress evidence discovered during a search unless the state can establish that illegally obtained information (here from the Kansas traffic stop) did not prompt Purdin to seek a search warrant. Appellant thus claimed that the state must show that officers had an independent source for information to obtain a search warrant.

{¶12} After consideration, the trial court did not agree that it must suppress the evidence discovered during the search of appellant's residence. Instead, the court determined that, after it redacted information obtained from the Kansas stop, the

4

>search-warrant affidavit nevertheless contained sufficient information to establish probable cause to believe that a search of appellant's residence would uncover evidence of a crime. The court points to the following facts to support a finding of probable cause: (1) Detective Purdin observed appellant leave appellant's residence in a pickup truck; (2) the detective stopped appellant after he observed two traffic violations; (3) the detective detected an odor of marijuana emanating from appellant's vehicle; (4) appellant admitted that he had smoked marijuana; (5) the officers arrested appellant for driving while under the influence; (6) a search of appellant's vehicle resulted in the discovery of two pounds of marijuana; and (7) Detective Purdin did not believe appellant's claim that two pounds of marijuana were for his personal use. The trial court thus denied appellant's motion to suppress evidence and reaffirmed his sentence. This appeal followed.

(Doc. 10, Ex. 28).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On October 27, 2017, the Adams County, Ohio, grand jury returned a one-count indictment charging petitioner with one count of possession of marijuana, pursuant to Ohio Rev. Code § 2925.11(A). (Doc. 10, Ex. 1). Petitioner entered a not guilty plea. (Doc. 10, Ex. 2). Petitioner, through counsel, filed a motion to suppress, which was granted in part and denied in part by the trial court. (Doc. 10, Ex. 3, 7).

On November 4, 2018, after plea negotiations, petitioner withdrew his former not-guilty plea and entered a guilty plea to one amended count of possession of marijuana. (*See* Doc. 10, Ex. 10). The trial court accepted petitioner's plea, found him guilty as charged, and sentenced petitioner to five years in the Ohio Department of Rehabilitation and Correction. (Doc. 10, Ex. 11 at PageID 85).

### Direct Appeal and Remand

On November 29, 2018, petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals.  (Doc. 10, Ex. 12).  In his merit brief, petitioner raised the following seven assignments of error:

1. The trial court erred in denying the Defendant of the choice to plead no contest and preserving his right for appeal on the Motion to Suppress.

2. The trial court erred when it found the Kansas trooper had probable cause to initiate a traffic stop for following too close, where the trial court ignored video evidence and testimony, relying instead on a poorly drawn inference from the Defendants statement.

3. Tpr. Rule impermissibly extended the traffic stop beyond its original purpose when he did so to evaluate the demeanor of the Defendant and Passenger.

4. Tpr. Rule impermissibly extended the traffic stop beyond its original purpose after issuing the final warning and continuing to interview and investigate the Defendant.

5. The trial court erred when it found Tpr. Rule had probable cause to search the Defendant's vehicle based on the alleged smell of marijuana.

6. It was plain error for the trial court to ignore admitted evidence that was the best evidence of the contents of the email, namely the email itself, where the contents were crucial to a lawful decision, and the contents were crucial to a lawful decision, and the contents contained factual errors, embellishments, and ambiguities that were all prejudicial to the Defendant.

7. Tpr. Rule had a duty to author a factually accurate email without embellishment, exaggeration, or untruths.

(Doc. 10, Ex. 13 at PageID 113).  On June 28, 2019, the Ohio Court of Appeals reversed the judgment of the trial court and remanded the case, finding that petitioner entered his plea based on incorrect information about his appellate rights.  (Doc. 10, Ex. 16).

On August 14, 2019, petitioner, through counsel, again withdrew his original not-guilty plea and entered a plea of no contest to the amended possession of marijuana charge.  (Doc. 10,

6

Ex. 17). The trial court accepted the plea, found petitioner guilty as charged, and sentenced petitioner to serve a prison sentence of five years in the Ohio Department of Rehabilitation and Correction. (Doc. 10, Ex. 17, 18).

**Appeal and Second Remand**

On September 9, 2019, petitioner, through counsel, filed an appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 19). Petitioner raised the following five assignments of error in his merits brief:

1. The trial court erred as a matter of law finding the Kansas trooper had probable cause to initiate a traffic stop for following too close.

2. Tpr. Rule impermissibly extended the traffic stop beyond its original purpose.

3. The trial court erred as a matter of law when it found valid probable cause based on the alleged smell of marijuana.

4. Tpr. Rule had a duty to author a factually accurate email without embellishments, exaggerations, or untruths.

5. The trial court committed plain error where it neglected to review the actual email contents that was admitted into evidence.

(Doc. 10, Ex. 20 at PageID 187). On March 6, 2020, the Ohio appeals court sustained in part and overruled in part petitioner's first assignment of error. The court sustained petitioner's first assignment of error to the extent that petitioner argued his initial traffic stop in Kansas violated the Fourth Amendment and that evidence obtained during that stop was inadmissible. The Court of Appeals overruled the assignment of error to the extent that petitioner argued that evidence from the Ohio traffic stop was inadmissible. The appeals court determined that the remaining assignments of error were moot and remanded the case to the trial court for further proceedings

as to the admissibility of evidence obtained during the execution of the Ohio search warrant. (Doc. 10, Ex. 24).

Pursuant to the remand, the trial court reevaluated the evidence used in the search warrant underlying petitioner's conviction. The trial court reviewed the search warrant to determine whether probable cause existed without reverence to the Kansas stop, which was found to be unconstitutional. (Doc. 10, Ex. 34). On June 15, 2020, the trial court found that the search warrant was issued upon probable cause and denied petitioner's motion to suppress. (*Id.*).

Petitioner, through counsel, appealed the trial court's decision to the Ohio Court of Appeals. (Doc. 10, Ex. 25). In his appellate brief, petitioner raised the following single assignment of error:

> The search warrant is invalid where the decision to seek a search warrant was prompted by information gained from an unlawful search.

(Doc. 10, Ex. 26). On May 26, 2021, the Ohio Court of Appeals overruled the assignment of error and affirmed the judgment of the trial court. (Doc. 10, Ex. 28).

Petitioner did not seek further review in the Ohio Supreme Court.

## State Habeas Corpus

On April 23, 2023, nearly two years later, petitioner filed a petition for a writ of habeas corpus to the Ohio Supreme Court. (Doc. 10, Ex. 32). On June 6, 2023, the Ohio Supreme Court dismissed the case. (Doc. 10, Ex. 33).

### Federal Habeas Corpus

On June 15, 2023, petitioner commenced the instant federal habeas corpus action.[2] (*See* Doc. 1 at PageID 19).  Petitioner raises the following four grounds for relief in the petition:

> **GROUND ONE**: Lack of Subject-Matter Jurisdiction.  See Attachment Exhibit-P2- Ohio Supreme Court petition for Writ of Habeas Corpus pgs. 44-57 incorporated herein as if fully rewritten.
>
> Supporting facts: The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by failing to rule that Lask's illegal (False Arrest) arrest for the underlying offense (Traffic Stop) OVI that was never charged rendered the trial court without Subject-matter jurisdiction, and unreasonable search/seizure, rendered search of his vehicle unconstitutional to the warrant requirement and evidence of two pounds of marijuana seized by 'exploitation' of illegal arrest was inadmissible rendered conviction/sentence void ab initio.
>
> **GROUND TWO:**  Unreasonable search and seizure of petitioner's vehicle pursuant to the warrant requirement.  See Attachment Exhibit-P2- Ohio Supreme Court petition for Writ of Habeas Corpus pgs. 57-68 incorporated herein as if fully rewritten.
>
> Supporting facts:  The search incident to arrest was illegal for two reasons: First, the arrest was illegal.  Second, the search incident to arrest requirement is only valid for the area in which the petitioner can reach.  The inventory search exception is also not valid premised on the illegal arrest for OVI in this case as the vehicle was not legally impounded at the time.  Either way, the information gained from the illegal (false) arrest of Lask and subsequent illegal search of his vehicle was used as unconstitutional probable-cause to justify his pretextual illegal arrest for OVI, and subsequent illegal search of his vehicle was used to obtain a warrant for his home in violation of Franks v. Delaware.
>
> **GROUND THREE:**  Affidavit in support of Search Warrant for petitioner's home contained material 'omissions' in violation of Franks v. Delaware.  See Attachment Ex.-P2-pgs. 69-74.  Incorporated herein as if fully rewritten.

---

[2] The petition was received by the Court on July 18, 2023.  (*See* Doc. 1).  Petitioner avers, however, that he placed the petition in the prison mailing system for delivery to the Court on June 15, 2023.  (*See* Doc. 1 at PageID 19). Because under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing, *see In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997), it is presumed that the petition was "filed" on June 15, 2023.

> Supporting facts: The Affidavit in support of Detective Sam Purdin's Search Warrant contained material omissions in violation of Franks v. Delaware, as the omissions were designed to mislead the issuing Judge, and with reckless disregard for the truth, that petitioner was Falsely arrested for OVI that was omitted from the search warrant critical material facts and evidence of probable-cause for the issuance of a search warrant is the totality of the circumstances.
>
> **GROUND FOUR:** Prosecutorial Misconduct and Brady Violation in the use of False evidence, Omitted information, False testimony in obtaining Indictment, Conviction, and Sentence.
>
> Supporting facts: The trial court, prosecution and its agents knowingly and willfully with malice intent, used false evidence of alleged OVI never charged, omitted information of the same from Affidavit for Search Warrant with reckless disregard to mislead the issuing Judge, and suborned false testimony before a grand jury to indict petitioner. See Attachment Exhibit-P2- Ohio Supreme Court, Writ of Habeas Corpus, pgs. 75-80 incorporated herein as if fully rewritten.

(Doc. 1 at PageID 8-13).

Respondent has filed a motion to dismiss the petition (Doc. 14), which petitioner opposes (Doc. 16). According to respondent, petitioner's ground for relief is time-barred. As discussed below, petitioner concedes that "the instant petition is untimely by rule and is time-barred," but asserts that the petition should not be dismissed based on his claim of actual innocence. (*See* Doc. 16 at PageID 845).

## III. ANALYSIS[3]

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

---

[3] Because the undersigned recommends that the petition be dismissed as time-barred, the Court need not determine whether it is prohibited form addressing the merits of petitioner's grounds for relief challenging the search and seizure of evidence under the Fourth Amendment. *See Stone v. Powell*, 428 U.S. 465, 494–95 (1976) (holding that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process).

10

pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.[4]

There is no basis for applying the provisions in Section 2244(d)(1)(B)-(D) to petitioner's grounds for relief. Petitioner has not alleged that a State-created impediment prevented him from filing the instant petition, or that his claims are governed by a newly recognized constitutional right made retroactively applicable to his case. Furthermore, petitioner's grounds for habeas relief are based on alleged errors that occurred during the trial court proceedings or on direct appeal. Petitioner was therefore either aware of the facts underlying his claims, or could

---

[4] In Ground One of the petition, petitioner claims that the trial court lacked subject matter jurisdiction. To the extent that petitioner is contending that this claim exempts him from the limitations period in this case, this Court and other federal courts "considering whether subject matter jurisdiction claims provide an exemption from the AEDPA's statute of limitations have uniformly rejected such claims." *Meadows v. Warden*, No. 1:10-cv-640, 2011 WL 4442644, at *4-5 (S.D. Ohio May 4, 2011) (collecting cases) (Report and Recommendation), *adopted*, 2011 WL 4434877 (S.D. Ohio Sept. 22, 2011). *See also, e.g.*, *Voyles v. Crow*, No. CIV-22-71-F, 2022 WL 949979, at *1 (W.D. Okla. Mar. 29, 2022) ("there is no exception to § 2244(d)(1)'s one-year statute of limitations for a habeas claim based on a trial court's alleged lack of subject matter jurisdiction").

have discovered them through the exercise of due diligence. Accordingly, petitioner's grounds for relief are governed by the one-year statute of limitations in 28 U.S.C. § 2244(d)(1)(A), which began to run when petitioner's conviction became final "by the conclusion of direct review or the expiration for the time for seeking such review."

Applying Section 2244(d)(1)(A) to the facts of this case, petitioner's conviction became final on July 12, 2021 when the 45-day period expired for filing an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' May 26, 2021 decision. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(1); *Gonzalez v. Thaler,* 565 U.S. 134, 149-52 (2012) (holding that because the petitioner did not appeal to the State's highest court, his conviction became final under § 2244(d)(1)(A) "when his time for seeking review with the State's highest court expired"). The one-year statute of limitations began to run on July 13, 2021, the day after petitioner's conviction became final. Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000). The statute of limitations expired one year later on July 13, 2022, unless statutory or equitable tolling principles apply.

No statutory tolling applies in this case. During the one-year limitations period, petitioner could have tolled the statute of limitations with pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). But petitioner did not file a state-court habeas corpus petition until April 23, 2023. Because the limitations period expired well before that date on July 13, 2022, this petition does not operate to toll the limitations period. *See Vroman*, 346 F.3d at 602.

12

Equitable tolling is also unavailable. The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is only entitled to equitable tolling if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace,* 544 U.S. at 418. Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling. First, petitioner has not shown that he has been diligent in pursuing his rights. The Sixth Circuit has indicated that the relevant inquiry in determining whether equitable tolling applies is whether petitioner was diligent in pursuing federal habeas relief. In this case, petitioner waited nearly two years, from July 12, 2021 until June 15, 2023, to file his habeas petition after his conviction and sentence became final. Accordingly, petitioner has not demonstrated that he was diligent in pursuing his federal rights. *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (finding that

13

petitioner's decision to proceed solely in state court "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence"). Second, petitioner did not argue—much less demonstrate—that an extraordinary circumstance prevented him from seeking relief in a timely manner. Petitioner has therefore failed to demonstrate that he is entitled to equitable tolling.[5]

Finally, petitioner has not demonstrated that the Court may excuse the untimeliness of this petition based on a colorable showing of actual innocence. "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. No such showing has been made in this case.

In response to the motion to dismiss, petitioner concedes that the petition "is untimely by rule and is time-barred," but asserts that the petition should not be dismissed based on his alleged actual innocence. (*See* Doc. 16 at PageID 845, 860-61). In support of this claim, petitioner asserts that his arrest for OVI was illegal and that the search of his automobile and home were

---

[5] To the extent that petitioner contends he is entitled to equitable tolling based on his pro se status (*see* Doc. 10, Ex. 32 at PageID 338) his position is unavailing. It is well-settled in the Sixth Circuit that petitioner's pro se status, lack of legal knowledge, or lack of access to legal materials are not sufficient to warrant equitable tolling. *See, e.g., Hall,* 662 F.3d at 750-51 (rejecting the petitioner's argument that he was entitled to equitable tolling because of his lack of access to the trial transcript, as well as his *pro se* status and limited law-library access); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)) ("this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling'").

not supported by probable cause. Petitioner argues he was never charged for an OVI offense and points to allegedly conflicting information presented in the police report, suppression hearing, search warrant, and during the state trial proceedings. (*See id.* at PageID 845-48, 857, 859).

However, "actual innocence means factual innocence, not mere legal insufficiency." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). In reasserting the claims presented in his motion to suppress and throughout the state-court proceedings—that the evidence underlying his conviction and sentence should have been suppressed—petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard. *See e.g.*, *Rozajewski v. Castleton*, No. 4:16-cv-56, 2017 WL 1960663, at *5 (D. Idaho May 11, 2017) (finding that reasserting that a search warrant was not supported by probable cause to be "insufficient to establish actual innocence under *Schlup v. Delo*"). Furthermore, petitioner has not supported his allegations of constitutional error with any new evidence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316. Petitioner has therefore failed to make a showing of actual innocence that would allow the Court to consider his time-barred claims.

Accordingly, the undersigned concludes that the federal habeas corpus petition filed in this case is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254. Under the applicable provision set forth in 28 U.S.C. § 2244(d)(1)(A), petitioner's conviction and sentence became final on July 12, 2021 and expired on July 13, 2022. Statutory and equitable tolling principles do not apply to further

15

extend the limitations period or otherwise avoid the statute-of-limitations bar to review in this case. The Court also may not excuse the untimeliness of this petition based on the miscarriage of justice exception to the statute of limitations. Therefore, petitioner's habeas corpus petition, filed on June 15, 2023, is time-barred and should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The motion to dismiss (Doc. 14) be **GRANTED** and the petition be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d)**.**

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[6]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: August 14, 2024      */s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

---

[6] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).